IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  1:21-cv-02409

JOHN MEGGS, an Individual, and
ACCESS 4 ALL, INC., a Florida Non-Profit Corporation

       Plaintiffs,

vs.

PARKWAY MARKET LIMITED LIABILITY COMPANY,
a Colorado Limited Liability Company

       Defendant.

---

# COMPLAINT

---

## Introduction

    Plaintiffs, JOHN MEGGS, an individual, and ACCESS 4 ALL, INC., a Florida Non-Profit Corporation, ("Plaintiffs" or "Plaintiffs") on their behalf and on behalf of all other mobility impaired individuals similarly situated hereby sues the Defendant, PARKWAY MARKET LIMITED LIABILITY COMPANY, a Colorado Limited Liability Company ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the Colorado Anti-Discrimination Act, C. R. S. § 24-34-601 et seq. ("CADA").

## The Parties

1.    Plaintiff, JOHN MEGGS, is an individual over eighteen years of age and is otherwise sui juris. Although a resident of California, Mr. Meggs splits his time between California and Colorado.

1

2.      Plaintiff, ACCESS 4 ALL, INC., is a non-profit corporation with a mission of ensuring enjoyment and equal access for disabled persons in all places of public accommodation. This entity was formed under the laws of the State of Florida and remains in good standing.

3.      Defendant, PARKWAY MARKET LIMITED LIABILITY COMPANY, a Colorado Limited Liability Company, owns, leases, leases to, or operates a place of public accommodation, in this instance a shopping center, alleged by the Plaintiffs to be operating in violation of Title III of the ADA and the CADA.

## Jurisdiction and Venue

4.      Defendant's property is a shopping center/plaza located at 6025 E Parkway Dr., Commerce City, CO 80211, Adams County ("Subject Property").

5.      Venue is properly located in the District of Colorado because venue lies in the judicial district of the property situs.  The Defendant's property is located in and does business within this judicial district.

6.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

7.      Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

8.      The Defendant, PARKWAY MARKET LIMITED LIABILITY COMPANY, owns and operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA.  The Defendant is thus required to comply with the obligations of the

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202

2

ADA.[2]

9.      Plaintiff, JOHN MEGGS, is an individual with disabilities as defined by and pursuant to the ADA.  Mr. Meggs is a paraplegic, with no use of his legs, stemming from a severe spinal cord injury and therefore has a physical impairment that substantially limits many of his major life activities[3] including, but not limited to, not being able to walk or stand. Mr. Meggs, at all times, requires the use of a wheelchair to ambulate.

10.     Plaintiff organization, ACCESS 4 ALL, INC., is comprised of individuals with disabilities, as defined by the ADA. The primary purpose of this organization is to represent the interest of its members by ensuring that they are not discriminated against at places of public accommodation.

<strong><u>Factual Context</u></strong>

11.     Mr. Meggs is a staunch advocate of the ADA. Since becoming aware of his rights, and their constant infringement, he has dedicated his life to this cause so that he, and others like him, may have full and equal enjoyment of public accommodations without the fear of discrimination and repeated exposure to architectural barriers.

12.     Mr. Meggs encounters architectural barriers at the majority of the public places he visits. Seemingly trivial architectural features such as parking spaces, ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, are cumbersome, arduous and even dangerous for him and other wheelchair users.

13.     The barriers to access that Mr. Meggs experiences at differing places of public accommodation are similar in nature. For example, he is faced with sloping in parking lots, cracks

---

[2] 28 CFR § 36.201(a) and 28 CFR § 36.104
[3] as defined by 28 CFR § 36.105(b)(1-2)

in sidewalks and asphalt, and improper restrooms and water closets (even when designated "accessible" or "handicapped") - over and over again. He is angered and disheartened by the repetitiveness of the complaints he is forced to make to employees and management, to no avail.

14.     Mr. Meggs has visited the Subject Property on multiple occasions, his most recent visits occurring on or about May 20, 2021, and on or about September 4, 2021.  On these occasions Mr. Meggs visited the Subject Property as a bone fide purchaser in an attempt to avail himself of the goods and services offered to the public within, but found that the Subject Property contained many violations of the ADA, both architecturally and in policy.

15.     The Subject Property is not the type of accommodation that requires advance reservations but Mr. Meggs intends to return on or about October 14, 2021 and/or on or about December 14, 2021, during his next visits to the Denver area - where he is a frequent traveler, regularly conducts business, and is speculating on property. He intends to revisit the Subject Property not only as a bone fide purchaser but also to monitor any progress made with to respect to ADA compliance.

16.     Mr. Meggs has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at the Subject Property.

17.     The ADA has been law for over thirty (30) years and the Subject Property remains non-compliant. Thus, the Plaintiffs have reasonable grounds to believe that they will continue to be subjected to discrimination by the Defendant.

18.     Mr. Meggs has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the barriers he has personally experienced which are listed in paragraph 23 of this complaint.

19.     Following any resolution of this matter Mr. Meggs will ensure that the Subject Property

4

undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This reinspection will occur as set forth in the parties' settlement agreement or as ordered by this Court.

## COUNT I

### Violation of Title III of the
### Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

20.     The Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

21.     The Defendant has discriminated against the Plaintiffs, and others similarly situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Property, as prohibited by the ADA.

22.     A preliminary inspection of the Defendant's property has shown that violations of the ADA exist.

23.     The following are architectural barriers and violations of the ADA that Mr. Meggs has personally encountered during his visits to the Subject Property:

**Parking and Exterior Accessible Route**

a.  The designated accessible parking spaces throughout the Subject Property lack proper signage and markings, and most parking spaces lack proper access aisles - as they do not meet the required width. The designated accessible parking spaces are located on slopes much greater than the allowable limits - up to 4% in some areas. These architectural conditions violate ADAAG Section 4.6 and Section 502 of the 2010 Standards for Accessible Design. Mr. Meggs could not unload freely and safely from vehicles in the

parking area - due to the inaccessible parking he was forced to park away from the shopping center to ensure that he could unload and load freely and safely from his vehicle.

**Entrance Access and Path of Travel**

b.   The Subject Property lacks a compliant accessible route to the adjacent street, sidewalk, and/or public transit, a violation of Section 206.2.1 of the 2010 Standards for Accessible Design.  Cross slopes, abrupt changes of level, and improper ramps have prevented Mr. Meggs from accessing the property from these areas and limited his modes of transportation. These conditions present Mr. Meggs with the hazard of tipping and could also cause damage to his wheelchair.

c.   The path of travel provided to enter the tenant spaces from the parking lot and the route provided to travel from one tenant space to another is impeded by cross slopes, abrupt changes of level, and improper ramps - violations of Sections 304, 403, and 404 of the 2010 Standards for Accessible Design. Mr. Meggs could not safely traverse these area as they present him with a tipping hazard and could cause damage to his chair, he was forced to travel through the traffic area of the shopping center in order to reach his destinations.

d.   The curb ramps provided to enter the tenant spaces (most glaringly, the ramp located adjacent to "Mama's Cafe") contain slopes which exceed the allowable limits, lack the proper handrails, lack proper level landings, and protrude into loading areas; violations of Sections 304, 403, 405, 406, and 502 of the 2010 Standards for Accessible Design.  Mr. Meggs could not navigate these routes without assistance and was forced to traverse ramps which endangered his safety by presenting him with a tipping hazard and a lack of maneuvering clearance found on the improper landing areas at the top of the ramps.

**Access to Goods and Services**

e.  Tenant spaces within the shopping center fail to make reasonable accommodations in policies, practices and procedures which would provide for the full and equal enjoyment of disabled individuals. They also fail to maintain the elements which are required to be accessible and usable by persons with disabilities by 28 CFR § 36.211. For example, a failure to remove stored goods on counter tops, a failure to remove debris along paths of travel, and a failure to maintain the clear floor space required in order to make use of accessible elements prevented Mr. Meggs from freely traveling about the tenant spaces and freely using the accessible elements; which include but are not limited to shopping aisles, checkout areas, and counters.

f.  Payment counters, self-service counters, and work surface areas throughout the shopping center are mounted beyond the reach of Mr. Meggs, in violation of Sections 308 and 904 of the 2010 Standards for Accessible Design. Equal facilitation is not provided to the disabled.

**Access to Restrooms**

g.  The restrooms located within the tenant spaces are littered with violations of the ADA and are unsafe for use by Mr. Meggs; and all those in wheelchairs. The restroom doors lack the required maneuvering clearance and, thus Mr. Meggs was unable to the enter/exit the restrooms without assistance - if alone he could become trapped within the restrooms. These are violations of Section 404 of the 2010 Standards for Accessible Design.

h.  While in the restrooms, Mr. Meggs could not make use of the toilet tissue dispensers, the soap dispensers, paper towel dispensers, or the mirrors, all of which were improperly mounted; a violation of Sections 308, 309, 603, 604, 605, and 606 of the 2010 Standards

for Accessible Design.

i.  Mr. Megg could not make use of the water closets without assistance due to the presence of improper centerlines and toilet seats, improper grab bars, improperly located flush controls, and a lack of transfer space. The foregoing made it impossible for Mr. Meggs to transfer from this wheelchair to the commode, without assistance, in order to make use of the restroom. These are violations of ADAAG Section 4.16 and Section 604 of the 2010 Standards for Accessible Design.

24.   Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D;  and the 2010 Standards for Accessible Design ("2010 Standards"), as promulgated by the U.S. Department of Justice.[4]

25.   The discriminatory violations described in paragraph 23 may not be an exhaustive list of the ADA violations that exist at the Subject Property but they are the result of a preliminary inspection conducted by the Plaintiffs and include all those personally experienced by Mr. Meggs. Plaintiffs require thorough inspection of the Defendant's place of public accommodation in order to photograph and measure the architectural barriers which exist at the Subject Property and violate the ADA.

---

[4] 28 CFR § 36.104

26.     Mr. Meggs, and all others similarly situated, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

27.     Defendant has discriminated against Mr. Meggs, and all those similarly situated, by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

28.     Defendant continues to discriminate against Mr. Meggs, and all those similarly situated, by failing to remove architectural barriers, and communication barriers that are structural in nature.[5]

29.     Defendant continues to discriminate against Mr. Meggs, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities.[6]

30.     Defendant continues to discriminate against Mr. Meggs, and all those similarly situated, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[7]

31.     If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[8] then the Defendant's facility must be readily accessible to and

---

[5] 42 U.S.C. § 12181(b)(2)(A)(iv)

[6] 42 U.S.C. § 12181(b)(2)(A)(ii)

[7] 42 U.S.C. § 12181(b)(2)(A)(iii)

[8] as defined by 28 CFR § 36.401(a)(2)

useable by individuals with disabilities in accordance with the 1991 Standards.

32.     Pursuant to 28 CFR § 36.304(a)(1) "any alteration" made to the Subject Property after January 26, 1992 must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Subject Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Meggs, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[9]

33.     Pursuant to 28 CFR § 36.304(a) Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

34.     28 CFR § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element at the Subject Property must comply with or be modified to meet. Those are defined as follows:

    a.   Elements that have not been altered since on or after March 15, 2012 must comply with the 1991 Standards.

    b.   Elements that have existed prior to and have not been altered since on or after March 15, 2012 that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with either the 1991 Standards or the 2010 Standards.

    c.   Elements that have been altered on or after March 15, 2012 that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with the 2010 Standards.

---

[9] 28 CFR § 36.402(a)(2)

35.     Plaintiffs are not required to notify Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiffs have found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In their experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

36.     Mr. Meggs is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiffs and the Defendant, a remedy in equity is warranted.  The public interest would not be disserved by the issuance of a permanent injunction.

37.     Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiffs are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

38.     Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Mr. Meggs injunctive relief, including an order to require the Defendant to alter the Subject Property and make the Subject Property readily accessible and useable to the Plaintiffs and all other persons with disabilities as defined by the ADA; or by closing the Subject Property until such time as the Defendant cure their violations of the ADA.[10]

**WHEREFORE,** Plaintiffs respectfully request:

a.  The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b.  Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by

---

[10] 42 U.S.C. § 12188(b)(2)

individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.   An award of attorney fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

d.   Such other relief as the Court deems just and proper, and is allowable under Title III of the Americans with Disabilities Act.

## COUNT II
**Violation of Colorado Anti-Discrimination Act,
C.S.R. § 24-34-601 et seq. (CADA)**

39.   The Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

40.   John Meggs is a disabled individual as defined by C.S.R. § 24-34-301(2.5).

41.   Defendant's facility is a place of public accommodation as defined by C.S.R. § 24-34-601(1).

42.   Colorado law provides that no person shall be discriminated against in regards to public accommodations on the basis of disability.[11]

43.   Pursuant to C.S.R. § 24-34-602(1) Mr. Meggs is authorized to bring a private action in any court of competent jurisdiction and to receive monetary damages.

---

[11] C.S.R. § 24-34-601(2)(b)

44.     Pursuant to C. S. R. § 24-34-602(1)(b) a person who violates provisions of the CADA based on a disability "shall be subject to the provisions of section 24-34-802." C. S. R. § 24-34-802 allows for a court order requiring compliance with the provisions of the violated section of the CADA, recovery of actual monetary damages, a statutory fine not to exceed three thousand five hundred dollars ($3,500.00), and an award of attorney fees and costs.

45.     Pursuant to C.S.R. § 24-34-604 claims alleging violations of the CADA must be brought within sixty days (60) of the alleged discriminatory act, Mr. Meggs has done so here.

46.     Pursuant to 3 CCR 708-1:60.1(A); the CADA, "is substantially equivalent to Federal law, as set forth in the Americans with Disabilities Act, as amended, and the Fair Housing Act concerning disability."

47.     Pursuant to C.S.R. § 24-34-802(4); "a court that hears civil suits pursuant to this section shall apply the same standards and defenses that are available under the federal 'American with Disabilities Act of 1990', 42 U.S.C. § 12101 et seq., and its related amendments and implementing regulations."

48.     As set forth above, Defendant has violated the Colorado Anti-Discrimination Act by denying Mr. Meggs, and all other disabled individuals, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations afford to the public at a place of public accommodation.

49.     As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Meggs has sustained bodily injury in the form of emotional distress, mental anguish, suffering and humiliation.

**WHEREFORE**, Plaintiffs respectfully request:

   a.   That this Court assume jurisdiction.

b.  An injunction ordering Defendant to comply with the ADA and the CADA.

c.  An award of monetary damages to Mr. Meggs; to the maximum extent permitted.

d.  Reasonable attorney fees and costs.

e.  An Order requiring the Defendant to maintain the required accessible features at the Subject Property.

f.  Other relief that this Court deems just and proper; and is allowable under the CADA.

Respectfully submitted,

Date: September 7, 2021

_/s/ Jon G. Shadinger Jr._
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
717 E. Elmer St.
Vineland, NJ 08360
Tel (609) 319-5399
Fax (314) 898-0458
js@shadingerlaw.com
_Attorney for Plaintiffs, John Meggs_
_and Access 4 All, Inc._